**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANGELO BINNO,

Plaintiff,

Case No. 11-12247

Honorable Denise Page Hood

v.

THE AMERICAN BAR ASSOCIATION,

Defendant.
_______________________________________/

**OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

## I. BACKGROUND

On August 30, 2011, Plaintiff Angelo Binno filed an Amended Complaint against Defendant American Bar Association ("ABA") alleging: Violation of Title III of the Americans with Disabilities Act, 28 C.F.R. 36.309 *et seq.* (Count I) and Violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203(b) (Count II).

The ABA Council of the Section of Legal Education and Admission to the Bar is the entity charged with accrediting law schools in the United States. (Am. Comp., ¶ 9) The United States Department of Education recognizes the ABA Council as the accrediting agency for programs that lead to the J.D. degree. (Am. Comp., ¶ 10) The ABA Council promulgates the Standards and Rules of Procedure for Approval of Law Schools with which law schools must comply in order to be ABA-approved. (Am. Comp., ¶ 11) Standard 503 of the ABA Standards for Approval of Law School states in pertinent part, "[a] law school shall require each applicant for admission as a first year J.D. student to take a valid and reliable admission test to assist the school and the applicant in assessing the applicant's capability of satisfactorily completing the school's educational program."

(Am. Comp., ¶ 13) The ABA's interpretation of Standard 503 states in pertinent part, "[a] law school that uses an admission test other than the Law School Admission Test ["LSAT"] sponsored by the Law School Admission Council ["LSAC"] shall establish that such other test is a valid and reliable test to assist the school in assessing an applicant's capability to satisfactorily complete the school's educational program" (Interpretation 503-1). (Am. Comp., ¶ 14) A law school that chooses to grant a waiver or exemption from the examination requirement faces sanctions, up to and including, loss of accreditation under Rule 13 of the ABA Rules of Procedure for the Approval of Law Schools. (Am. Comp., ¶ 15) The requirement to establish that the test "is a valid and reliable test ..." does not apply to the LSAT and it is this exam that is required by virtually all law school programs in the United States as a condition precedent to admission. (Am. Comp., ¶ 16) The LSAC website states that all law schools in the United States require applicants to take the LSAT and that this requirement is a condition of their continued accreditation by the ABA. (Am. Comp., ¶ 17)

The LSAT is a standardized test consistent of approximately 100 multiple choice questions. (Am. Comp., ¶ 18) Approximately one-fourth of the questions on the exam are what is known as "Analytical Reasoning Questions" or logic game questions which require spatial reasoning and diagraming of visual concepts for successful completion by most applicants. (Am. Comp., ¶ 19) A blind or visually impaired applicant is unable to conceive of spatial relationships or diagram answers in the same manner as their sighted peers. (Am. Comp., ¶ 20) The LSAC has previously acknowledged the appropriateness of waiver of the LSAT as a reasonable accommodation for blind applicants. (Am. Comp., ¶ 21)

Binno is legally blind and is incapable of perceiving spatial relationships or performing the necessary diagraming to successfully complete the logic games questions on the LSAT at a

competitive level. (Am. Comp., ¶ 22) The inability to competitively answer questions on a quarter of the exam caused Binno substantial embarrassment, emotional distress, and mental anguish during the exam which adversely impacted his overall performance, including his performance on sections of the exam which are not inherently visually biased. (Am. Comp., ¶ 23) Despite repeated attempts, Binno has been unable to attain admission to law school as a result of his poor performance on the LSAT and has been denied admission to three law schools in the Eastern District of Michigan. (Am. Comp., ¶ 24) Binno has been unable to secure a waiver of taking the LSAT as a result of Standard 503 promulgated by the ABA. (Am. Comp., ¶ 25) Despite his disability, Binno speaks three different languages fluently, was able to complete a high school education in three years as opposed to the traditional four years, graduated from Wayne State University in Detroit, Michigan, and obtained employment with the United States Department of Homeland Security, where he was awarded a high-level security clearance. (Am. Comp., ¶ 26) Because of the ABA's actions in implementing Standard 503, Binno is unable to request a reasonable accommodation in the form of waiver or exemption from the LSAT and instead will continue to be damaged by the ABA's requirement that he take a discriminatory exam. (Am. Comp., ¶ 27)

In lieu of an Answer to the Amended Complaint, the ABA filed a Motion to Dismiss and/or for Summary Judgment. Binno filed a response to the motion, along with a Motion to Strike two exhibits supporting the ABA's Motion to Dismiss. The ABA filed a response to the Motion to Strike and a reply to Binno's response. The Michigan Attorney General filed a Motion for Leave to File an Amicus Brief. Binno concurred in the Attorney General's motion and the ABA does not object to the Attorney General's motion. A hearing was held on the matter.

## II. ANALYSIS

**A. Standard of Review**

Rule 12(b)(1) of the Rules of Civil Procedure provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. S*ee, RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**B. Standing**

The ABA claims that Binno lacks standing to bring this action because the claim should be against the law schools who denied Binno admission. Binno responds that it is because of the ABA's standards that the law schools are unable or unwilling to grant waivers for fear of sanctions from the ABA.

Standing is a jurisdictional matter and is a threshold question to be resolved by the court

before the court may address any substantive issues. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). Article III of the United States Constitution limits the federal courts' jurisdiction to "cases and controversies." In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the United States Supreme Court set forth three elements to establish standing: 1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; 2) that the injury is caused by defendants' conduct; and 3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)(citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).

The ABA argues that Binno lacks standing to bring the action against the ABA because Binno is not himself the object of the ABA's challenged action–that Binno's injury arises indirectly from a restriction imposed by the ABA upon a third party, the law schools. The ABA claims Binno cannot trace his injury to the ABA's accreditation standards for law schools. Binno's claim is a result of the questions on the LSAT which Binno alleges discriminate against him and other blind or visually impaired individuals taking the test. The ABA argues that the adverse admission decisions are not made by the ABA but third parties who are not before the Court, specifically, the law schools to which Binno applied for admission. The ABA claims that Binno does not allege that the ABA accreditation standards require law schools to assign a certain weight to an applicant's LSAT or other test scores when making an admission decision. The ABA accreditation standard is only that the law school require each applicant take a valid and reliable admission test and that the law schools are free to weigh or discount the test score as they see fit.

Binno responds that he can trace his injury to the ABA accreditation standard. Binno claims that a least one law school to which Binno applied has considered a policy to waive the LSAT for Binno and other blind and visually impaired individuals. Binno asserts that the law schools were thwarted in their attempts to do so by the ABA because the law schools could not waive the LSAT requirement without violating the ABA Standard 503. Binno argues that by requiring the LSAT to be taken by all law school applicants, and considered for admissions purposes by all accredited law schools, the ABA has unequivocally "erected a barrier" for blind and visually impaired applicants to gain admission to an accredited law school and pursue a legal career. Binno claims that although Standard 503 may not prescribe a particular weight to the LSAT, the plain language of the standard requires law schools to apply *some* weight to the LSAT scores, which Binno argues discriminates against blind and visually impaired applicants to at least *some* degree. Law schools are unable to grant Binno a waiver because the law schools are acting in accordance with the ABA Standard 503 in order to avoid sanctions from the ABA.

The ABA does not dispute that it sets forth standards which law schools must follow in order to be accredited by the ABA. However, Binno's Amended Complaint does not allege that any of the law schools he applied to submitted any request for variance or waiver to the ABA as set forth in Standard 802 for purposes of accreditation. Standard 802 states, "A law school proposing offer a program of legal education a portion of which is inconsistent with a Standard may apply for a variance. If the Council finds that the proposal is nevertheless consistent with the general purposes of the Standards, the Council may grant the variance, may impose conditions, and shall impose time limits it considers appropriate. The Council may terminate a variance prior to the end of the stated time limit if the school fails to comply with any conditions imposed by the Council. As a general

rule, the duration of a variance should not exceed three years." (Ex. A, ABA's motion)

A reading of the Amended Complaint shows that Binno's claim is to the question posed on the LSAT, that blind and visually impaired applicants are unable to perform--the spatially-related questions. There are no allegations that the ABA, itself, directed these questions to be included on the LSAT. Standard 503 provides that a law school require an applicant take a valid and reliable admission test. It does not specifically direct law schools to require applicants to take the LSAT. The interpretation of Standard 503 is that a law school using an admission test other than the LSAT must establish that such other test is a valid and reliable test. The interpretation essentially tracts the Standard 503 language requiring a law school using another test to establish that the other test is valid and reliable. The ABA has found that the LSAT, in particular, is a valid and reliable test based on this interpretation. The ABA does not prohibit a law school from using a different test. As noted above, a law school may also apply for a variance as set forth in Standard 802. The Amended Complaint does not allege that any of the law schools to which Binno applied made such a request for variance. Binno's Amended Complaint fails to trace his injuries to the ABA Standard 503. The facts set forth in the Amended Complaint allege that Binno's injuries are from the questions posed on the LSAT, not to the ABA Standard 503.

Even if Binno could set forth a claim regarding the ABA Standard 503 and those standards were stricken, the law schools would not be precluded from using the LSAT as a requirement for admission, with the spatial-related questions posed on the test. The law schools could continue to rely on the LSAT scores. The same issue raised against the ABA would still arise because Binno would not be able to perform adequately under the same LSAT questions, preventing Binno from being admitted by the law schools. Binno's injuries do not result from the imposition of the ABA

Standard 503.

**C. Title III Discrimination Claim**

If Binno can establish standing, the ABA argues that his claim under the ADA fails to state a claim upon which relief may be granted because Binno fails to allege facts that the ABA "offers" the LSAT. 42 U.S.C. § 12189. Binno claims that the issue of whether the ABA offers the examination is a factual one not appropriate for resolution through Rule 12(b)(6). Binno argues that he has amended his initial complaint to add such facts.

Section 309 of the ADA provides:

> Any person that ***offers*** examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examination or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189 (emphasis added).

The Amended Complaint alleges that the ABA "requires that the Law School Admission Test be offered, has reviewed and approved of the contents of the exam under Standard 503, and imposes harsh sanctions for schools that do not require their applicants to take the examination." (Am. Comp., ¶ 48) As noted above, the ABA has approved the LSAT as a reliable exam under Standard 503. However, there are no factual allegations that the ABA "offers" the LSAT or that the ABA has any authority to determine the content or format of the LSAT. Both cases cited by Binno in support of his argument that the ABA "offers" the LSAT do not support his position.

In both cases, *Bonnette v. D.C. Court of Appeals*, 2011 WL 2714896 (D.D.C. July 13, 2011) and *Elder v. Nat'l Conference of Bar Examiners*, 2011 WL 672662 (N.D. Ca. Feb. 16, 2011), the National Conference of Bar Examiners ("NCBE") claimed that it did not "offer" the Multistate Bar

Exam because it did not "administer" the test. Both courts denied the NCBE's motion to dismiss because the complaints in those cases alleged that the NCBE developed the test and controlled the format in which the test was offered. In this case, there are no factual allegations that the ABA administered, developed or controlled the format of the LSAT. The only allegations against the ABA are that they reviewed the LSAT and determined that the LSAT met ABA Standard 503–that the test was reliable. Binno has failed to state a claim in violation of the ADA against the ABA.

**D. Title V Interference Claim**

Given that Binno has failed to allege a claim under Title III of the ADA, Binno cannot claim interference under Title V of the ADA since Title V depends on whether the ABA action failed to accommodate Binno's disability.

**E. Plaintiff's Motion to Strike two documents submitted by the ABA**

Binno seeks to strike two documents submitted by the ABA in support of its motion. The ABA agreed to withdraw the document referencing Binno's LSAT scores and comparative ranking. The other evidence is the declaration of Hulett H. Askew regarding Standard 503 which Binno claims is hearsay. Because the Court did not consider this affidavit in considering the motion, the motion is moot.

**F. The Michigan Attorney General's Motion to File Amicus Brief**

Given that Binno concurred in the motion and the ABA does not objection to the filing of the brief, the Court grants the Motion to File Amicus Brief filed by the Michigan Attorney General.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Motion to Dismiss Plaintiff's Amended Complaint filed by

Defendant **(Doc. No. 17)** is GRANTED.

IT IS FURTHER ORDERED that the Motion to Strike filed by Plaintiff **(Doc. No. 19)** is DENIED as MOOT.

IT IS FURTHER ORDERED that the Motion for Leave to File Brief as Amicus Curiae filed by the Michigan Attorney General **(Doc. No. 25)** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager